UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KENT B. KUBERT, individually and on ) 
behalf of all others similarly situated, )
)
                Plaintiff, )
)
  vs. )    05 C 5865
)
AID ASSOCIATES, d/b/a )
PLAZA ASSOCIATES, )
)
                Defendant. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendant AID Associates d/b/a Plaza Associates ("Plaza") to bar testimony from Howard Gordon and the cross motions of the parties for summary judgment. For the reasons set forth below, the motion to bar testimony is granted. Plaza's motion for summary judgment is granted; the plaintiff class's motion for summary judgment is denied.

### BACKGROUND

In 2005, Plaintiff Kent Kubert allegedly owed a consumer debt to Target National Bank. Plaza acted as debt collector on behalf of the bank, and in the course of its collection efforts, Plaza sent a letter to Kubert. In pertinent part, the letter stated as follows:

> We have been authorized to offer you the opportunity to settle this account with a lump sum payment for 50% of the above balance due, which is equal to $479.09.

> This offer will be valid for a period of thirty-five (35) days from the date of this letter.
> ...
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.
> ...
> You may already have satisfactory proof that this account is listed with us in error. If so, please send this notice back along with a copy of one of the following to support your claim: Bankruptcy Notice from the court stating case number and filing date, Satisfaction of Judgment, Proof of prior settlement, Letter from the original Creditor clearing your account.

Approximately five months after receiving the letter from Plaza, Kubert filed the instant two-count complaint. Count I asserts that the letter ineffectively conveyed the 30-day validation notice required by 15 U.S.C. § 1692g(a). Count II claims that the language quoted above was a false, deceptive, or misleading statement in violation of the Fair Debt Collection Practices Act ("FDCPA"). 15 U.S.C. § 1692e. Kubert sought to represent a class of Illinois residents from whom Plaza attempted to collect a delinquent consumer debt allegedly owed to Target National Bank between October 12, 2004, and October 12, 2005. The class, which contains approximately 1850 members, was certified on February 9, 2006.

Discovery has been completed; the process included a survey of 160 users of credit at a mall in a suburb of Chicago conducted by Howard Gordon. Plaza has moved to bar testimony from Gordon as inadmissible. Each party also moves for summary judgment.

## LEGAL STANDARDS

### A. Motion to Bar Expert Testimony

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the standard of review initially established in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993).[1]  *United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005). To be admissible, expert testimony must both be offered by a person qualified as an expert by their knowledge, skill, experience, training, or education and assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. The testimony must be based on facts and data that reliably relate to the facts of the case and that are proved by valid theory or technique. *See Daubert*, 509 U.S. at 593, 113 S. Ct. at 2796-97. The admission or exclusion of expert testimony is a matter left to the discretion of the trial judge. *See Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990). Whether a particular witness as an expert is qualified is determined by comparison of the area in which the witness has superior skill, knowledge, education, or experience with the subject matter of the witness's proposed testimony. *Id.*

### B. Cross Motions for Summary Judgment

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[1] Although *Daubert* was a case in which scientific testimony was in question, its requirements have extended to include all expert testimony, scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-78, 119 S. Ct. 1167, 1174 (1999).

party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986).

When parties file cross motions for summary judgment, each motion must be assessed independently, and denial of one does not necessitate the grant of the other. *M. Snower & Co. v. United States*, 140 F.2d 367, 369 (7th Cir. 1944). Rather, each motion evidences only that the movant believes it is entitled to judgment as a matter of law on the issues within its motion and that trial is the appropriate course of action if the court disagrees with that assessment. *Miller v. LeSea Broad., Inc.*, 87 F.3d 224, 230 (7th Cir. 1996).

With these principles in mind, we turn to the parties' motions.

## DISCUSSION

### A. Motion to Bar Expert Testimony

The purpose of the survey was to determine two things: first, whether a significant fraction of consumers would be misled or confused as to whether the

letter represented the debtor's last chance to settle the matter for less than the full amount owed; and second, whether a debtor would understand that provision of one of the listed documents was not a necessary prerequisite to disputing the validity of the underlying debt. Two groups were surveyed. One, which consisted of respondents who read the text of the letter that Kubert received, with all identifying information removed, was referred to as the "treatment group." The other, which consisted of respondents who read a letter that did not contain the language regarding the 35-day duration of the settlement offer or the list of documents that could supply proof that the debt no longer existed, was called the "control group."

Each group was permitted to review the respective letters for as long as they wished before being asked any questions about what they had read. The survey consisted of several questions, which were read to respondents. With regard to the settlement offer, respondents were asked:

> [W]hat do you think would happen if you did not accept this settlement offer? Do you think the bill collector would renew or extend this offer? Or do you think this would be your last chance to get a discount off the amount owed? Which of these comes closest to your opinion?

Once the examiner finished reading the question, respondents were handed a card that contained three answers:

> I think the bill collector would renew or extend this offer
> I think this offer would be my last chance to get a discount off the amount owed
> Don't know/not sure

Though the first two answers were read to the respondent, the third was not. In fact, examiners were explicitly instructed not to read that response when offering the

respondent the different answer choices.

With regard to the provision of documentation that the assertion of debt was erroneous, respondents in the treatment group were asked:

> [Y]ou do not have...a Bankruptcy Notice from the court stating case number and filing date, Satisfaction of Judgment, Proof of prior settlement, or a Letter from the original Creditor clearing your account. If you don't have any of these proofs to show that the money owed is in error, do you think you can dispute the debt, or do you think you cannot dispute the debt?

The card handed to respondents after they were read this question contained three answers:

> I can dispute the debt without any of these proofs
> I cannot dispute the debt without any of these proofs
> Don't know/not sure

As was the case with the question regarding the settlement offer, examiners were explicitly instructed to read the first two answers but not the "Don't know/not sure" answer.

Finally, still with regard to the provision of documentation, respondents in the control group were asked:

> Let's say you believe the money the bill collector says you owe is in error. Do you think you can dispute the debt without proof, or do you think you cannot dispute the debt without proof?

The answers on the card then handed to respondents were similar but not precisely the same as those given to the treatment group:

> I can dispute the debt without proof
> I cannot dispute the debt without proof
> Don't know/not sure

Again, the examiner was instructed to read only the first two answers.

As the Seventh Circuit has noted, to be admissible, surveys presented in debt-collection practices must comport with professional research principles. *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 776 (7th Cir. 2007). The survey at issue in this case has been examined under the lens of *Daubert* previously, in *DeKoven v. Plaza Assocs.*, 2009 WL 901369 (N.D. Ill. Mar. 31, 2009). Judge Coar was presented with a challenge to the admissibility of the questions that pertained to the settlement offer; the plaintiff in *DeKoven* did not pursue a cause of action based on an ineffective validation notice. In that case, Plaza advanced many of the same arguments presented in the instant motion to bar.

Judge Coar concluded that the proffered testimony was not admissible under *Daubert* because of the structure of the letter presented to the control group. Specifically, he found fault with the choice to omit any reference to a time limit on the settlement offer rather than inclusion of the 35-day duration and then further explanation in the form of the "safe harbor" language set out in *Evory*. We agree with Judge Coar's reasoning; without that language included, the results gleaned from the control group do not provide reliable evidence as to whether the settlement offer contained in the initial collection letter was misleading. *See id.* at *7.

With regard to the survey questions pertaining to the validation notice, Plaza argues that the failure of the examiners to read the "Don't know/not sure" option to respondents renders the results of the survey unsound and unreliable. Judge Coar considered this argument (in the context of the settlement offer claim) but rejected it, concluding that this argument is applicable only where the option is not presented at all, rather than one such as this where options are presented inconsistently. On this

point, we do not agree with his assessment. There is no way to assess whether respondents read the option on the card, or, if they did, whether they disregarded it in light of the fact that the examiner did not read that portion of the answer. For those respondents, the danger that their response represents a guess rather than an actual assessment of the language presented is apparent. Indeed, the Federal Judicial Center manual cited by the parties as well as Judge Coar, states that the "no opinion" option must be "explicitly" mentioned to effectively reduce the chances that responses are merely guesses. *Reference Manual on Scientific Evidence* 250 (2d ed. 2000). To present mixed messages regarding the acceptability of a respondent not having a definitive answer to one of the survey questions does not, in our opinion, represent the explicit mention of that possibility that would produce reliable results. Accordingly, we conclude that the results of the survey are inherently unreliable and inadmissible as evidence on the claims of the class, and Plaza's motion to bar Gordon's testimony is therefore granted.

## B. Cross Motions for Summary Judgment

In the absence of the survey results, the sole evidence Kubert offers in support of the class's claims is his own testimony. This is insufficient to survive a motion for summary judgment. *See*, *e.g.*, *Evory*, 505 F.3d at 774, 776. Accordingly, Kubert's motion for summary judgment in favor of the class is denied; Plaza's motion for summary judgment in its favor on both counts of the complaint is granted.

## CONCLUSION

Based on the foregoing analysis, the motion to bar testimony from Howard Gordon [103] is granted, as is Plaza's motion for summary judgment [104]. Kubert's motion for summary judgment [97] is denied.

Charles P. Kocoras
United States District Judge

Dated: May 7, 2009